**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | **Chapter 11** |
| **ULTRA SAFE NUCLEAR CORPORATION, et al.,** | **Case No. 24-12443 (KBO)** |
| | **(Jointly Administered)** |
| Debtors. | **Hearing Date: December 18, 2024 at 3:00 PM**<br>**Sale Objection Date: December 11, 2024**<br>**Cure Objection Date: December 10, 2024** |
| | **Docket Nos. 33, 112 and 152** |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING DEBTORS' SALE MOTION AND RELATED NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

Oracle America, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 case, submits this limited objection and reservation of rights ("Rights Reservation") regarding both: (1) *Debtors' Motion for Entry of (A) An Order (I) Approving Bidding Procedures in Connection With Sale of the Debtors' Assets and Related Bid Protections, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Lease, and (V) Granting Related Relief; and (B) An Order (I) Approving Purchase Agreements, and (II) Authorizing a Sale Free and Clear of All Liens, Claims, Encumbrances and Other Interests* [Dkt. No. 33] ("Sale Motion"); and (2) *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Dkt. No. 152] ("Assumption Notice"), filed by Ultra Safe Nuclear Corporation, et al. ("Debtors").

## I. INTRODUCTION

1. In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign an executory contract between the Debtors and Oracle.

Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

2. First, the targeted Oracle agreement is, or pertains to, one or more licenses of intellectual property which is not assignable absent Oracle's consent pursuant to both the underlying license agreement and applicable law.

3. Second, the Assumption Notice does not provide a complete description of the contract to be assumed and assigned. After Oracle reached out to Debtors' counsel to determine the identity of the contract they wish to assume and assign, Debtors confirmed that the intended contract is the active agreement between Oracle and the Debtors. In order to do so, however, they must cure all outstanding amounts owed.

4. Third, at present, no adequate assurance information has been provided for the Stalking Horse (defined below) and the Stalking Horse may not be the ultimate purchaser/assignee. Therefore, Oracle is unable to determine whether the successful bidder will be capable of performing under the terms of the contract which the Debtors seek to assume and assign. Until the ultimate purchaser is known, Oracle reserves its rights on this point.

5. Finally, the APA (defined below) may include the unauthorized shared use of Oracle's license, in a manner which is not permitted by Oracle's agreement. Oracle objects to any unauthorized shared use of its licenses which may be contemplated by the Debtors.

6. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II. <u>FACTUAL BACKGROUND</u>

7. The Debtors filed the above captioned case on October 29, 2024 and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

8. On October 30, 2024, the Debtors filed the Sale Motion which seeks Court authority to sell substantially all assets of the Debtors. The Sale Motion identified Standard Nuclear, Inc., as the stalking horse bidder ("Stalking Horse").

9. On November 20, 2024, the Debtors filed the *Notice of Filing of Revised Stalking Horse Agreement* [Dkt No. 112] ("Notice"). Attached as Exhibit 1 to the Notice is the Asset Purchase Agreement between the Debtors and the Stalking Horse ("APA").

10. Section 7.5 of the APA contemplates information sharing between the Stalking Horse and the Debtors and states the following:

> **Access to Records.** On and after the Closing Date, Seller, on one hand, and Buyer on the other hand, will each afford promptly to the other Party and such Party's agents reasonable access to such other Party's books of account, financial, and other records (including, without limitation, accountant's work papers), information, employees, and auditors to the extent necessary or useful for the other Party in connection with any audit, investigation, dispute, or litigation, or any other reasonable business purpose relating to the Purchased Assets, including, without limitation, Seller's administration of the Bankruptcy Case; provided, however, that any such access shall not unreasonably interfere with the conduct of the business of any Party. Each Party shall bear such Party's own out-of-pocket costs and expenses reasonably incurred in connection with the foregoing.

(*See*, APA @ §7.5).

11. It is unclear which services will be provided during the post-closing period. Therefore, Oracle reserves all rights in the event any provision in the APA, including any subsequent Transition Services Agreement ("TSA"), purports to authorize the shared use of Oracle's licensed software, whether post-closing, or at any other time.

12. Oracle also reserves all rights regarding any subsequent asset purchase agreement which proposes to include transitional or shared use, and which involves an as yet unknown buyer.

13. On November 26, 2024, the Debtors filed the Assumption Notice. Exhibit "1" to the Assumption Notice identifies one Oracle agreement described as a "Software – Cloud Services Agreement-PO No 1212" ("Oracle Agreement"), with a stated cure of $234,076.47.

## III. ARGUMENT

### A. The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.

14. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

15. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365©(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365©(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

16. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent.

17. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreement at this time.

### B. The Debtors Have Not Adequately Identified The Oracle Agreement To Be Assumed and Assigned.

18. The Assumption Notice does not provide sufficient information for Oracle to determine which contract is at issue. Therefore, Oracle reached out to Debtors' counsel, and Debtors confirmed that they wish to assume and assign the agreement relating to "Oracle PaaS and IaaS Universal Credits" services.

19. For clarity, the Assumption Notice should also include the underlying support renewal. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned – if that is the Debtors' intent. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 961-2 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

20. Under California law,[1] made applicable by the Oracle Agreement, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642**.**

---

[1] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

### C. The Debtors May Not Have Provided The Correct Cure Amount.

21. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

22. The Debtors have identified a cure amount of $234,076.47 for the Oracle Agreement. However, as of the date of filing this Rights Reservation, Oracle records reflect that it is owed not less than $300,382.91 which must be paid as a cure.

23. Oracle reserves all rights regarding the cure amount.

### D. The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

24. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1). As of the date of this Rights Reservation, no adequate assurance information regarding the Stalking Horse has been provided and the sale is subject to overbid.

25. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the ultimate purchaser and/or the proposed assignee: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

26. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreement.

27. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E. The Oracle Agreement Does Not Authorize Simultaneous Use By The Debtors and the Eventual Purchaser.

28. The APA contemplates that certain services may be provided between the Debtors and the Stalking Horse. Precise information about the nature of these proposed shared services is not provided.

29. This omission precludes Oracle from determining how, or if, its contracts will be affected. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreement, and potentially would result in an unauthorized "splitting" of the licenses between the Debtors and the Stalking Horse.

30. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and the ultimate purchaser the right to shared use of the Oracle licenses beyond the licenses' terms.

31. Oracle reserves all rights regarding any transitional use, including under any final APA or TSA, pending Oracle's further review of the same.

## IV. CONCLUSION

32. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreement, or any Oracle agreement.

33. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: December 10, 2024
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By: /s/ James E. Huggett

James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
**BUCHALTER, A PROFESSIONAL CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Benjamin Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**