```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                          .  Chapter 11
                                .  Case No. 24-12443 (KBO)
ULTRA SAFE NUCLEAR              .
CORPORATION, et al.,            .  (Jointly Administered)
                                .
                                .  Courtroom No. 3
                                .  824 Market Street
            Debtors.            .  Wilmington, Delaware 19801
                                .
                                .  Monday, December 2, 2024
. . . . . . . . . . . . . . .   .  10:08 a.m.

                         TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE KAREN B. OWENS
                    UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:           Matthew B. Lunn, Esquire
                           YOUNG CONAWAY STARGATT & TAYLOR, LLP
                           Rodney Square
                           1000 North King Street
                           Wilmington, Delaware 19801

For USNC
Investment, LLC:           Nathan A. Haynes, Esquire
                           GREENBERG TRAURIG, LLP
                           One Vanderbilt Avenue
                           New York, New York 10017



(APPEARANCES CONTINUED)

Audio Operator:            Gauri Patel, ECRO

Transcription Company:     Reliable
                           The Nemours Building
                           1007 N. Orange Street, Suite 110
                           Wilmington, Delaware 19801
                           Telephone: (302)654-8080
                           Email: gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For the Official
    Committee of
 3  Unsecured Creditors:     Jeremy W. Ryan, Esquire
                             POTTER ANDERSON & CORROON, LLC
 4                           1313 North Market Street
                             6th Floor
 5                           Wilmington, Delaware 19801

 6                           -and-

 7                           Robert J. Gayda, Esquire
                             SEWARD & KISSEL, LLP
 8                           One Battery Park Plaza
                             New York, New York 10004

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                  INDEX

2  MOTIONS:                                                         PAGE

3  Agenda
   Item 3:    Motion of the Official Committee of Unsecured          4
4             Creditors for an Order Pursuant to Bankruptcy
              Rule 2004 and Local Bankruptcy Rule 2004-1
5             Authorizing and Directing the Production of
              Documents from the Debtors and Additional
6             Parties [D.I. 168,11/27/24]

7             Court's Ruling:                                        14

8

9  Transcriptionist's Certificate                                    17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       (Proceedings commenced at 10:08 a.m.)

2              THE COURT: Good morning, everyone. This is Judge
3  Owens.

4              We're gathered for a hearing, a scheduling
5  conference in Ultra Safe. Thank you very much for working
6  productively to finalize the orders that you submitted under
7  certification of counsel and CNO; I was able to review those
8  orders and approve them. So, to the extent that several
9  haven't hit the docket yet, they will hit the docket shortly.

10             But, with that, I will turn the podium over to
11 counsel and you can walk me through the remaining item on the
12 Court's agenda today.

13             MR. LUNN: Sure, Your Honor. Good morning, and
14 thanks for hearing us in connection with today's hearing.

15             Matthew Lunn from Young Conaway, on behalf of the
16 debtors.

17             As this is the Committee's motion, and we
18 appreciate Your Honor setting time for scheduling, with
19 respect to it, I will cede the podium to Committee counsel to
20 address their request to shorten notice, with respect to
21 the 2004 motion.

22             THE COURT: Okay. Thank you very much.

23             Mr. Ryan, Mr. Gayda, good morning.

24             MR. RYAN: Good morning, Your Honor.

25             Jeremy Ryan on behalf of the Committee, along with

1 my co-counsel, Mr. Gayda, from Seward & Kissel.

2 We understand from Ms. Lopez you just want to
3 discuss timing of the 2004 motion, Your Honor.  We did get
4 the objection from USNC.

5 You know, from our perspective, the request to
6 shorten notice and have it heard prior to and have production
7 ordered there USNC Investments prior to the sale objection
8 deadline is fairly simple and that's that we're coming up on
9 a sale proceeding.  One never knows what happens in auctions
10 or sale hearings, what directions they may take.

11 From the Committee's perspective, we need to be
12 prepared in case there's a permutation or a position taken by
13 USNC Investments as part of that process and having a sense
14 as to the *bona fides* of their claim is important to us.  You
15 know, as I think we've noted, this was a funded debt
16 obligation that was unsecured for a very long time.  It
17 became secure this year and there are questions that we have
18 around that.

19 And, you know, just in terms of some of the
20 permutations, we expect, based on everything we've heard, for
21 this to be a robust auction with multiple participants.  This
22 is secured debt at this point.  There's always the
23 possibility that a potential purchaser might want to assume
24 that in lieu of cash.  There's always a possibility that they
25 may want to try and buy some of that debt to credit bid it.

1                We don't know what we don't know and we need to be
2   prepared for what might happen.  And that other possibility
3   is, there may be a permutation where USNC Investments
4   ultimately objects to the sale and there's a necessity to
5   say, Can we sell this under 363(f) over their objection as a
6   purported secured creditor?
7                So those are the reasons why the Committee has
8   tried very hard to get this done, but I do need, especially
9   the targeted items, produced prior to that.  So that's why we
10  would request a hearing in time to argue -- talk about the
11  merits of our request and why we need it.  But that's also --
12  I hate to argue merits, but it does kind of dovetail into the
13  motion to shorten, as well.
14               THE COURT:  Okay.  Thank you very much.
15               Just refresh my recollection, who is the stalking
16  horse bidder at this point?  Is it the target of the 2004 or
17  no, someone else?
18               MR. RYAN:  No, Your Honor.
19               I'll let Mr. Lunn speak to the sale process,
20  though.
21               MR. LUNN:  Again, for the record, Matthew Lunn.
22               Standard Nuclear is the stalking horse bidder, and
23  in terms of timeline, I think it probably is helpful for Your
24  Honor just to refresh.
25               Bids are due -- Your Honor entered a bid

1  procedures order last week -- bids are due December 9th.
2  Sale objection is December 11th.  Hopefully, we have the
3  robust auction, as Mr. Ryan was noting, scheduled for
4  December 12th.
5              And Your Honor has us in for the sale hearing on
6  December 18th at 3:00 p.m.
7              THE COURT:  Okay.  All right.  Thank you very
8  much.
9              Okay.  Well, I'm happy to hear from the debtors
10 and the third party.  I'm sorry, I'm getting up to speed, as
11 well, on the fly.
12             Is it USNC that is the target?
13             MR. HAYNES:  That is correct, Your Honor.  USNC.
14             THE COURT:  Okay.  I'm happy to hear from you on
15 scheduling.
16             MR. HAYNES:  Good morning, Your Honor.
17             Nathan Haynes from Greenberg Traurig from our
18 Wilmington office.  We also have Mr. Dennis Meloro on the
19 line, as well.
20             So, just a couple of points, Your Honor.  First,
21 you know, there's no emergency here.  None of what we're
22 talking about is going to affect the sale.  Mr. Ryan has
23 already identified potential issues with the claim that I
24 think would preclude whatever these, you know, permutations
25 he was talking about in the first instance.

1                   And, look, just because they want these documents
2    before the sale, in and of itself, isn't good reason to
3    shorten notice here.
4                   And, also, Your Honor, before we all start
5    spending a bunch of money on this, you know, our view is, we
6    think would be helpful for all of us to understand sort of
7    the quantum of what we're actually arguing about here, which
8    we're going to figure out presumably on the 11th.
9                   And if the auction hits it out of the park, you
10   know, great; then, we'll have -- you know, maybe everybody
11   gets paid.  Who knows?  Or if the auction is a bust, maybe
12   we're talking about half a cent on the dollar and I think
13   that's going to inform, you know, the efforts of the parties
14   here in connection with this dispute.
15                  So, from our perspective, this should be on normal
16   notice, put on for hearing on the 18th and we'll agree to
17   work with the Creditors Committee to iron out any disputes on
18   scope in advance of that time.  Thank you, Your Honor.
19                  THE COURT:  Are you willing to begin a rolling
20   production, to the extent that there's agreements reached
21   ahead of the hearing?
22                  MR. HAYNES:  We already have, Your Honor.  Yes, we
23   haven't produced yet, but we are in the process of collecting
24   documents that we've already agreed that we're going to turn
25   over.

1            THE COURT:  So there was some discussion before
2    this motion --
3            MR. HAYNES:  Yes.
4            THE COURT:  -- and there was an agreement reached?
5            MR. HAYNES:  Yes, Your Honor.
6            Well, they had given us a list of what they
7    wanted.  We said, Well, we'll give you X, Y, Z, but A, B, C,
8    we would like to, you know, put the brakes on until we see
9    what's going on with the auction.  So, we're working on the
10   agreed-upon materials now.
11           THE COURT:  Okay.
12           MR. GAYDA:  Your Honor, could I briefly respond?
13           THE COURT:  Sure.  Why don't I hear from the
14   debtors, as well, before you respond, Mr. Gayda, because I
15   think I saw that the debtors were a target of the 2004, as
16   well; is that correct?
17           MR. LUNN:  It is correct, Your Honor.
18           Again, for the record, Matthew Lunn.
19           From the debtors' perspective, this was sort of a
20   "shoot first, aim second" attempt.  I mean, I think the
21   motion does say that we've pretty much agreed with the
22   Committee in terms of production.  We are providing, I think,
23   significant documents in response to their requests.  A lot
24   of their requests, which won't come as a surprise, if Your
25   Honor has looked at them, are answered in the schedules and

1  statements and certain things that have been actually filed
2  already.
3        And what the debtors' concern is that this becomes
4  somewhat of a sideshow, with respect to the debtors, at
5  least, while we're right in the midst of an important
6  process, i.e., the sale process.
7        So the debtors understand and appreciate the
8  Committee's need no expediency, but there's got to be some
9  happy median here.  And with respect to the debtors, I would
10 actually ask that the debtors be taken from this motion right
11 now, as we -- I -- I think we have an agreement as to 90
12 percent of it, and then we continue to work with the
13 Committee.
14       And if there's ultimately an issue with respect to
15 those documents, then we can be back in front of Your Honor,
16 quickly, with respect to a discovery-type of request, not
17 a 2004, Your Honor.
18       THE COURT:  And does the proposed stalking horse
19 order, I guess that I approved, contemplate a distribution of
20 the sale proceeds in any form?
21       MR. LUNN:  I don't believe it does, Your Honor,
22 and I would have to -- it may, with respect to the DIP
23 lender.  But I believe beyond that, I think, actually, the
24 DIP order would control there anyway.  I don't -- it doesn't
25 say that we're distributing.

1          I think where Your Honor is going is, if there's
2 secured creditors, are we distributing assets, with respect
3 to them, to USNC, and the answer is "no," with respect to
4 that.
5          THE COURT:  So in the DIP order, there's not a
6 provision of a distribution upon a sale to USNC?
7          MR. LUNN:  Not to USNC, no.  Just to the DIP
8 lender, which is the third-party DIP lender.
9          THE COURT: Sure.  Okay.  That's helpful.
10          Okay.  Mr. Gayda, happy to hear from you.
11          MR. GAYDA:  Thank you very much, Your Honor, and
12 good morning.
13          For the record, Bob Gayda, Seward & Kissel for the
14 Official Committee of Unsecured Creditors.
15          Just to respond on a few points, we did meet-and-
16 confer with both, USNC Investments and the debtor, with
17 respect to our 2004 request and both parties have been
18 cooperative in some fashion.  USNCI, in particular, took the
19 position that, as Mr. Haynes noted, why don't we wait and see
20 what's going to happen with the sale.
21          As Your Honor noted, there's two issues with
22 respect to the sale proceeds.  One would be distribution.
23 The Committee is satisfied with respect to distribution of
24 proceeds that -- you know, money is going to go out the door
25 to the DIP lender and we understand that; that's part of the

1  DIP order and that's the way of the world, right.

2              But with respect to USNC Investments, we have a
3  valid question with respect to whether or not they're
4  properly secured on the vast majority of their obligations,
5  right. And so while there's no distribution there, I do
6  think there's going to be a pot of sale proceeds; hopefully,
7  it is a big pot of sale proceeds and there is a robust sale
8  process.

9              And there's going to be questions on -- within
10 three weeks about the use of those sale proceeds. Are
11 they -- do they constitute collateral of USNCI?

12             The Committee wants to be in a position to answer
13 those questions on an expedited basis. We don't want to be
14 flat-footed, come December 27th, or what have you, when the
15 sale closes, and be concerned and have arguments over cash
16 collateral over budgets over the use of that cash, all right.

17             We believe that our requests are pretty targeted.
18 USNCI agreed to provide certain information. Some of the
19 other information, they basically said, Well, let's just wait
20 and see.

21             Well, this is an expedited sale process. The
22 Committee walked into this. It was November 15th when we
23 were retained. We've gotten up to speed. We've got
24 agreement on a vast majority of the orders that had been
25 requested by the debtors and, otherwise, what we want now is

1 information, particularly, from USNCI.

2 As the debtors sit here today, they don't
3 necessarily have some of the information that USNCI would
4 have, right.  USNCI was operated by Richard Hollis Helms, who
5 was an insider of the debtor for a very long time.  So there
6 are transactions that precede the Helms note as we define in
7 our motion, other things of that nature.

8 We're trying to get information with respect to
9 those transactions and how those unsecured obligations became
10 secured, all right.  The debtors don't necessarily have that
11 information.

12 And we don't think that that information is going
13 to be terribly burdensome, either; it's probably --
14 there's -- it's been represented to the Committee that
15 there's no real board meeting minutes or anything like that
16 that precede this April 2, 2024, transaction, which secured
17 all of these unsecured obligations.  USNCI was run by Richard
18 Hollis Helms, the sole manager, as far as we know today.

19 So, I don't know that there's some broad swath.
20 There's this huge universe of documents that we're seeking,
21 right.  We're trying to understand the operation of that
22 entity, how those notes became secured when they were
23 previously unsecured.

24 So I think we tried to be focused.  We've tried to
25 move quickly, but we do have issues that are upcoming within

1  the next three weeks that are going to be important to the
2  Committee on how this case progresses post-sale.
3              THE COURT:  Okay.  That's helpful.  Thank you so
4  much.  I appreciate the background, as well as the current
5  information to get me up to speed.
6              And I'll just make the following ruling that I'm
7  going to deny the request to schedule the motion on an
8  expedited basis.  I don't think cause has been established to
9  have it heard on such an expedited time frame, and I'll hear
10 the motion at the sale hearing.
11             In the meantime, I think the informal agreements
12 that were reached by the parties, obviously, should continue
13 and if further agreements can be reached, then please go
14 ahead and do rolling productions.
15             I'll say this, if the note becomes an issue at the
16 sale, as the Committee thinks it could, then all the parties
17 are all aware that sale approvals could get, could be
18 delayed, because you're not giving the Committee -- if the
19 note that's at issue becomes at issue for the sale, then the
20 sale hearing will be delayed because they don't have the
21 documents to investigate it.
22             So, if that happens, we'll deal with it.  So,
23 everyone is going into the sale process with an understanding
24 of how this will play out if it does, in fact, become an
25 issue at the sale.  I won't hesitate to adjourn the sale

1   hearing if I believe they should be getting documents that
2   they should have received to resolve this issue for the sale.
3           But, otherwise, we can resolve it at the sale
4   hearing for future, I guess, future distribution issues and
5   the challenge period, which I understand is approaching in
6   January.  So, at that point, the parties should be laser-
7   focused on this issue and I will order a production and hear
8   the parties about the scope and the breadth and whatnot on
9   the 18th, okay?
10          MR. GAYDA:  So, apologies, Your Honor.  Just one
11  quick clarification on that.
12          THE COURT:  Sure.
13          MR. GAYDA:  So, again, for the record, Bob Gayda,
14  Seward & Kissel, for the Committee.
15          It was stated in the USNCI's objection to our
16  motion that there's a challenge period with respect to USNC
17  Investments.  There is not.
18          THE COURT:  Okay.
19          MR. GAYDA:  So if you look at the DIP order,
20  there's a challenge period with respect to the DIP lender's
21  prepetition liens that were rolled up into the DIP, but not
22  with respect to USNC Investments' liens.
23          THE COURT:  Okay.  Well, that's certainly helpful,
24  but nonetheless, I understand why it becomes an issue once we
25  get the sale proceeds.  And hopefully, there'll be a

1  significant amount for the estate, I hope.
2           And so, with that, then the parties can turn their
3  attention on how to address the issues associated with a
4  robust sale process, as often that occurs when there's a good
5  result.  If there's an unfortunate result, then you all will
6  determine how to deal with the issues in, perhaps, a
7  different manner.  But let's see how this plays out.  I agree
8  there's value to it, so I think we should wait and see, but
9  I'll hear you at the sale hearing, okay.
10          MR. GAYDA:  Thank you, Your Honor.
11          MR. HAYNES:  Thank you, Your Honor.
12          THE COURT:  Mr. Lunn -- you're welcome --
13 Mr. Lunn, you looked like you wanted to say something.  I
14 don't want to cut you off.
15          MR. LUNN:  Nope.  No, I didn't.
16          I was just coming back on camera to say thank you,
17 as you were wrapping up your ruling.
18          THE COURT:  Okay.  Excellent.
19          Well, nice to see you.  I hope you all had a
20 wonderful Thanksgiving with family and friends, and good luck
21 with the sale process, and I will see you all shortly.  Take
22 care.
23          COUNSEL:  Thank you, Your Honor.
24          THE COURT:  Bye-bye.
25       (Proceedings concluded at 10:24 a.m.)

```
 1                        CERTIFICATION
 2           I certify that the foregoing is a correct
 3  transcript from the electronic sound recording of the
 4  proceedings in the above-entitled matter to the best of my
 5  knowledge and ability.
 6
 7  /s/ William J. Garling                    December 10, 2024
 8  William J. Garling, CET-543
 9  Certified Court Transcriptionist
10  For Reliable
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```